IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JULIUS LAMART HODGES,
        Plaintiff,

v.                                                          Civil No. 3:21cv614 (DJN)

COL. PETE MELETIS, *et. al.*,
        Defendants.

## MEMORANDUM OPINION

Julius Lamart Hodges, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed

this 42 U.S.C. § 1983 action.  The action proceeds on the Complaint.  ("Compl." (ECF No. 1).)

The matter comes before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A.  As discussed below, the Court will dismiss Plaintiff's claims for failure to state a claim

upon which relief may be granted and as legally frivolous.

## I.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any

action filed by a prisoner if the Court determines that the action (1) "is frivolous" or (2) "fails to

state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A

(setting forth grounds for dismissal).  The first standard includes claims based upon "an

indisputably meritless legal theory," or claims where the "factual contentions are clearly

baseless."  *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*,

490 U.S. 319, 327 (1989)).  The second standard borrows the familiar standard for a motion to

dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, the Court takes a plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' that will 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).  Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556).  For a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the

2

elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).  Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring) (indicating an unwillingness to "require[e] district courts to assume the role of advocate for a *pro se* plaintiff" by addressing unraised issues); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.   ALLEGATIONS

In his Complaint, Plaintiff names as Defendants:  Col. Pete Meletis, the Superintendent of the Prince William-Manassas Adult Detention Center; Cpt. Allen West, Inmate Classification; and, Lt. Wanda Creighton, Work Release Manager.  (Compl. at 1-2.)  Plaintiff alleges the following:[1]

> 1.    Approximately January 26, 2021, inmates enrolled in the Work Force program [were] denied the proper procedural due process, creating a liberty interest, being given the option to either work as essential workers in the main and modular kitchen or being removed from the transitional re-entry Work Force program which is supposed to be a precursor to Work Release.  During the entire time from January 26, 2021 to March 6, 2021, the whole jail population was quarantined besides 8 Work Force inmates.  These 8 inmates were subjected to treatment and conditions atypical with a significant hardship in relation to ordinary incidents of prison life.  Officials and jail staff showed a deliberate indifference to exposing us to unreasonable risk[] of serious harm, depriving basic human needs, as inmates worked over 20 plus consecutive days, 12 hours shifts in a kitchen around outside staff who originally caused the COVID-19 outbreak.  No contract tracing was done and inmates were placed in aggravated and dangerous conditions.

---

[1]    The Court employs the pagination assigned to the Complaint by the CM/ECF docketing system.  The Court corrects the capitalization, spelling, and punctuation in the quotations from the Complaint.

Col. Peter Meletis (Superintendent), Cpt. Allen West, overseeing inmate security, were complicit to placing us in these exploitable conditions, failing to protect us and refusing to hear our concerns.

When I, Julius Hodges, would speak up voicing concerns, I was told by Sgt. Noqui, Sgt. Simpson, and Cpt. Depoy to stop complaining and that this is what I signed up for. . . . Sgt. Noqui then verbally promised to all Work Force inmates that he would quote, "put his heart and soul into writing us each individual letters to ensure out transition to Work Release." Unfortunately, we never received these letters from Sgt. Noqui who claimed his relationship with DOC would hold weight. Instead, after several months of these promises (approx. May 2021) we received a very generic letter from Lt. Creighton . . . not stating the severities of the conditions we were subjected to and not holding any weight towards the process of out transition.

Since this time, several inmates have leapfrogged Work Force from general population straight to Work Release.

The normal conditions for central kitchen trustees are as follows: 12–15 a.m. workers, 10 p.m. workers; modular kitchen trustees, 8 a.m. workers, and 6 p.m. workers. From January 26, 2011 – March 2021, 11 Work Force inmates performed the duties of 36–39 regular trustee a.m/p.m. shifts. Since this time, after work duties and potential exposure to COVID has continued.

As COVID variants have continued, Work Force ha[s] been traveling to Ebernezzar Church located in Woodbridge, VA; EVOC Police Training Academy located in Bristow, VA, and other surrounding areas cutting grass and generating money for the jail at the expense of free labor and potentially exposing inmates to COVID and increasing work duties.

On July 20, 2021, Lt. Creighton signed a new contract requiring more work at Ebenezzar Church like branch removal, bush hedging, weed removal. Also, we were required to get on our hands and knees and scrub urinals and bathroom tiles of public and officer restrooms by direct orders of Cpt. West. Some days we woke up at 5 a.m. to cut grass, then unload delivery trucks, then clean bathrooms and lobbies. Several days we had to cut in over 98° degree to 100° degree heat yet denied outside recreation at 7:30 p.m. if it was over 90° with a heat index. However, not one time this whole grass cutting season have we not gone outside to cut the grass because it was too hot.

2.     Second claim is of discrimination and my denial of proper procedural process and due process under [the] Equal Protection Clause. So approximately July 2020, I was reached out to on two separate occasions to consider applying to the Work Force program by admission officers MJO Thompson and then MJO now Sgt. Callahan. We/I decided to agree it was written and highlighted on my reference list [that] I would be moved to Work Release as soon as I reached 18 months. I then agreed to participate in [the] Work Force program under the premise of the oral and written agreement of participation to ensure an opportunity at Work Release. However, upon inquiry of Work Release status approaching my 18 month mark addressed to MJO Callahan, on January 19, 2021, MJO Callahan responded, "Per DOC you are not approved for Work

Release." So my aunt, sister, mom, and friend reached out to DOC to find out why my status was denied. Then Mr. Mike Combs informed my aunt that it was up to the jail for my admission to Work Release. When relaying this message to admission officers they changed the narrative again saying DOC said to resubmit my paper work which was supposedly done around March 2021, only to receive a letter from Lt. Creighton on May 28, 2021, "Dear Mr. Hodges, based upon my written request . . . to Department of Corrections, you have not been authorized or approved by the Department of Corrections for any unsupervised community program. I received an email from the Department of Corrections."

So I then wrote directly to DOC/Mr. Mike Combs attempting to receive clarity as to why I was denied to a program I successfully completed two times prior, on June 4, 2021. I explained my charges of larceny of a vehicle in North Carolina should not prohibit me from the criteria of the six must have in PWC's SOP Work Release Admission. My letter was received July 22, 2021, by office of the Director of Offender Management Services and responded to July 30, 2021 in direct contradiction to Lt. Creighton and Sgt. Callahan's previous statements I was denied by DOC. The response by DOC stated as follows: "You will only be reviewed to determine if you meet the criteria for work release if you have been requested for the program by the jail. Ask the program coordinator at the jail if they have the program and if so, do you qualify for their work release program. If you meet their requirements, a request will be sent in for you to be reviewed by the Virginia Department of Corrections (VADOC). Once the jail accepts you for placement, you will receive a contract from the jail. The initial approval for Work Release is a preliminary action, pending the final decision of the jail authority. The VADOC does not have jurisdiction over jails."

I immediately brought it to Lt. Creighton's and Cpt. West's attention and Lt. Creighton stated DOC writing that letter made her look like she was lying. [She] took my letters and said she'll get back to me. Cpt. West said it was a generic letter and DOC denied me twice. After a little over a week of Lt. Creighton having my only copy of my response from DOC, I wrote a grievance on discrimination based on personal bias and not being given a proper procedural process.

Lt. Creighton oversaw the grievance, responded again stating I was denied by DOC, and sent my paper work back to me through Work Release officer, stating, "She's done with me" and I needed to humble myself, making it out as I was wrong for following the proper grievance procedure.

My comparison complaint of discrimination of personal bias is the precedence of me having a charge outside of Virginia could not be valid when I personally wrote letters for an inmate J. Whyrie who had done DOC prison time in the state of Texas, as well as at least 3 gang members transitioning to Work Release since my participation which had to be overrode and is an alert to place[d] on inmates by the Virginia State Police. I personally wrote for a few gang member participates to be removed.

So in my closing opinion, I was colluded against by staff mentioned in this Complaint allowing personal bias to cloud professional judgment because of my freedom of speech I applied to unjust treatment of Work Force inmates during pandemic. I argue if I was denied in August 2020 by DOC for Work Release, why

was I not informed then, but instead deceived to invest 13 months of free labor thus far to the benefit of the jail? I have maintained patience and performed my duties to the best of my abilities, to have narratives change every few months. This is reoccurring issue for all inmates and now I respectfully seek accountability and relief.

(Compl. at 4-9 (paragraph structured added).)  Plaintiff contends that this conduct violates his

First,[2] Eighth,[3] and Fourteenth Amendment rights to due process[4] and equal protection.[5]  (*Id.* at

8.)  Plaintiff seeks injunctive relief and monetary damages.  (*Id.* at 9.)  The Court construes

Plaintiff to raise the following claims for relief:

Claim One: Defendants subjected Hodges to cruel and unusual punishment in violation of the Eighth Amendment when he volunteered for the Work Force and was required to work long hours in conditions that he found objectionable during a COVID-19 quarantine.

Claim Two: Defendants violated Hodges' (a) due process and (b) equal protection rights when they discriminated against him when he was denied work release.

## III.    ANALYSIS

### A.    Official Capacity Claims

Plaintiff specifically contends that Defendants are liable in their "official capacity."

(Compl. at 1-2.)  However, Plaintiff may not obtain money damages from Defendants in their

official capacities under § 1983.  "[N]either a State nor its officials acting in their official

---

[2]      "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I.

[3]      "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

[4]      "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

[5]      "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Additionally, the Eleventh Amendment prohibits federal courts from considering claims for damages against defendants in their official capacities. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). Therefore, Plaintiff's claims for monetary damages against Defendants in their official capacities will be DISMISSED. Nevertheless, because of the liberal construction afforded *pro se* complaints, *see Gordon*, 574 F.2d at 1151 (requiring liberal construction of *pro se* complaints), the Court assumes that Plaintiff intended to name Defendants in their individual capacities with respect to his claim for monetary damages.

### B.      Eighth Amendment (Claim One)

To state an Eighth Amendment claim, an inmate must allege facts showing "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that constitutes "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

The subjective prong requires the plaintiff to allege facts that indicate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (rejecting objective test for deliberate

indifference). "Deliberate indifference is a very high standard — a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (requiring facts demonstrating that the defendant actually drew the inference of the risk of harm). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Plaintiff fails to allege facts that plausibly satisfy the Eighth Amendment. From Plaintiff's own allegations, he voluntarily participated in the Work Force and it appears that he could have withdrawn from the program if he did not like its requirements. With respect to the long work hours in the kitchen, work outside on hot days, cleaning bathrooms, unloading trucks, and alleged potential exposure risks to COVID-19, Plaintiff merely identifies undesirable conditions and assignments, not extreme, inhumane, conditions or assignments. More importantly, Plaintiff fails to allege that he suffered any injury, much less "a serious or

significant physical or emotional injury resulting from the challenged conditions." *De'Lonta*, 330 F.3d at 634 (citation omitted).  For this reason alone, Plaintiff's Eighth Amendment claim fails. *Cf. Johnson v. Townsend*, 314 F. App'x 436, 440 (3d Cir. 2008) (citations omitted) (holding that "complaints of mental and physical exhaustion are insufficient to bring his work assignment in the culinary department within the Eighth Amendment's prohibition against cruel and unusual punishment absent any indication that he was compelled to perform physical labor which was beyond his strength, endangered his life or health, or caused undue pain, or where there is no allegation that the work assignment was punitive in nature" (citing *Berry v. Bunnell*, 39 F.3d 1056, 1056-57 (9th Cir. 1994)); *Jackson v. Kinney*, 1994 WL 242860, at *1 (5th Cir. May 18, 1994) (holding work assignment "requiring inmates to boost or lift hogs from a pit, in and of itself," failed to rise to an Eighth Amendment violation).

Moreover, Plaintiff also fails to show that Defendants demonstrated deliberate indifference to a serious or significant risk of harm to him.  Plaintiff fails to assert facts sufficient to form an inference that Defendants subjectively recognized a substantial risk of harm to Plaintiff from his various Work Force job assignments and that they ignored that risk.  *Parrish ex rel. Lee*, 372 F.3d at 303 (citation omitted).  Accordingly, Plaintiff fails to state an Eighth Amendment claim, and Claim One will be DISMISSED for failure to state a claim.[6]

**B.    Due Process (Claim Two (a))**

In Claim Two (a), Plaintiff argues that Defendants denied him due process when they denied him work release.

---

[6]    Plaintiff also contends that Defendants promised that they would write him glowing letters for work release based on his participation in the Work Force under tough conditions, but, in the end, did not.  The Court fails to discern, and Plaintiff fails to explain, how this amounts to cruel and unusual punishment.

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim requires the Court to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). Plaintiff does not enjoy a protected liberty interest in work release participation. *See Kitchen v. Upshaw*, 286 F.3d 179, 187 (4th Cir. 2002) (holding that "under Virginia law prisoners have no constitutionally protected liberty interest in work release"); *see also Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991) ("Under Virginia law, work release . . . [is a] characteristically discretionary program[] in which [the prisoner–plaintiff] could acquire no entitlement.").

Furthermore, to the extent that Plaintiff argues that Defendants somehow violated Virginia Department of Corrections or jail operating procedure regarding work release, violations of prison operating procedures of this ilk do not implicate due process rights. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (explicitly rejecting the rule that a violation of state-created rule amounts to a violation of due process); *Puranda v. Hill*, 2012 WL 2311844, at *5 (E.D. Va. June 18, 2012) (dismissing claim, because "a state's failure to abide by its own law as to procedural protections is not a federal due process issue"). Accordingly, for these reasons, Plaintiff's due process claim lacks merit. Accordingly, Claim Two (a) will be DISMISSED for failure to state a claim and as legally frivolous.

### C.   Equal Protection (Claim Two (b))

In Claim Two (b), Plaintiff contends that Defendants discriminated against him in violation of his right to equal protection when they denied him work release.

10

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To state an equal protection claim, Plaintiff must allege facts that indicate:  "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  At most, Plaintiff indicates that inmates from general population "leap frogged" him into the work release program and three gang members "transition[ed] to Work Release." (ECF No. 1, at 8.)  Plaintiff also claims that he wrote a letter for an inmate who had served time in Texas who presumably also was permitted to enroll in the Work Release program, when Plaintiff had a North Carolina charge, but he could not enroll.  (*Id.*)  However, Plaintiff fails to explain how these inmates were similarly situated to him or that this was the result of purposeful or intentional discrimination.  Simply put, Plaintiff has not made either showing.  Accordingly, Claim One (b) will be DISMISSED WITHOUT PREJUDICE for failure to state a claim.[7]

---

[7]     Although Plaintiff only sets forth two claims in his Complaint, buried in his second claim he alleges that Defendants violated his exercise of free speech.  At most, Plaintiff states:  "I was colluded against by staff mentioned in this complaint, allowing personal bias to cloud professional judgment because of my freedom of speech I applied during the unjust treatment of Work Force inmates during [the] Pandemic." (ECF No. 1, at 8.)  The Court fails to discern exactly what Plaintiff intends to argue.  A "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Although Plaintiff has a protected First Amendment right to complain about the conditions of his work environment, Plaintiff fails to allege facts that would plausibly suggest that each of the named Defendants violated his right to free speech. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To the extent that Plaintiff contends that Defendants retaliated against him for his exercise of free speech, again, Plaintiff's allegations are too vague and conclusory.  Courts generally treat claims of retaliation by inmates with skepticism, because "[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's claims for monetary damages against Defendants in their official capacities will be DISMISSED as legally frivolous. Claims One and Two (a) will be DISMISSED for failure to state a claim and as legally frivolous. Claim Two (b) will be DISMISSED WITHOUT PREJUDICE for failure to state a claim. The Clerk will be DIRECTED to note the disposition of this action for purposes of 28 U.S.C. 1915(g). The action will be DISMISSED.

Let the Clerk file a copy of this Memorandum Opinion electronically and send a copy to Plaintiff.

An appropriate Order shall issue.

                                                            /s/
                                          David J. Novak
                                          United States District Judge

Richmond, Virginia
Dated: March 31, 2022

---

F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted). "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." *Adams*, 40 F.3d at 74. Instead, a plaintiff must allege facts that plausibly show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.* at 75. To state a claim for retaliation in violation of the First Amendment, a plaintiff "must allege that (1) [he or] she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [the plaintiff's] First Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted). Even generously construing Plaintiff's Complaint, he fails to make this showing. Although complaining about work may be protected conduct, Plaintiff fails to allege facts that would plausibly suggest that the named Defendants took any action against him that adversely affected his First Amendment rights or that there was a causal relationship between the protected activity and the Defendants' conduct.

12